Ruffin, C. J.
 

 If the crop was still growing, when the trial at law took place, it is probable it might be reached at law by a
 
 scire facias
 
 on the judgment
 
 quando,
 
 and there would be no necessity for resorting to this Court
 
 Mara
 
 v.
 
 Quin,
 
 6 T. R. 10. It does not appear in the bill how the fact was, as^ it ought, properly speaking. But we take it for granted, that the crop had been gathered and sold the second time, for the advanced price mentioned in the bill. Still, we think the bill cannot be sustained.
 

 There is no doubt that creditors may come into a Gourt of Equity against executors, or against them and the heirs or devisees, for accounts and for payment out of the proper fund. It seems to be the common mode in England, at the present day, for administering estates, and is certainly much the most convenient, as it saves vast expense and trouble in trying issues at law, as to the assets, where every voucher is to be proved, over and over again, against every creditor, and as considerable portions of th®> assets in that country, in almost every case, are equitable. We hold the same thing here.
 
 Simmons
 
 v.
 
 Whitaker, 2
 
 Ired. Eq. 129. The subject was much discussed and fully explained by Chancellor Kent, in
 
 Thompson
 
 v.
 
 Brown,
 
 4 John. C. C. 619. But, in those cases, the creditor comes into the Court of Equity
 
 ah origine
 
 for himself, or for himself and the other creditors ; and the accounts are ordered there, and relief granted, for the greater convenience, and to prevent multiplicity of suits at law, - although the question, as to the amount pud administration of legal assets, is properly cognizable at law. That, however, is essentially different from the present case. This plaintiff did not file his bill, but elected, in the first instance, to sue at law, and to try the issue on
 
 plene administramt,
 
 without a bill of discovery, and upon such
 
 *100
 
 evidence as he thought proper to risk his case on before the jury. The question being legal, the tribunal legal, and the trial regular, the result must be conclusive on the one par-ty as well as the other, unless there was fraud practised by one of them on the trial, so as to prevent it from being a fair trial. In
 
 Martin
 
 v.
 
 Harding,
 
 3 Ired. Eq. 603, the plaintiff had by mistake admitted the executor’s plea of
 
 fully administered,
 
 and proceeded against the land, and then'filed a bill for satisfaction out of the personal estate. On demurrer, the Court dismissed the bill, and said, if a creditor chooses to go on at law, and has the plea of fully administered found against him or confesses it, there is no possible ground for relief in equity, where the executor has been guilty of no fraud in misrepresenting the state of the assets. And what would be a fraud, in such a case, is explained by the subsequent observation, that it is not sufficient, for example, that the creditor has discovered, that the executor had assets at the time of the trial, which the executor did not disclose, nor the creditor know of or prove ; for an executor is not bound to give evidence against himself at law, and there are methods of
 
 obtaining
 
 discoveries, in which the executor would have a right to discharge himself, as well as be bound to charge himself, by his answer. Now, there is no communication between these parties stated in the bill. The executor does not appear to have been present at the trial, much less to have misled the plaintiff in the mode of proving his case, or to have made any representation to him whatever. The whole stress of the bill is, that the defendant returned an account of sales, in which Skinner was mentioned as the purchaser of a crop of corn, of which the defendant himself was the purchaser. Now, that, in itself, amounted to no fraud, nor any thing like a fraud, upon any body, or at any time. The Court holds, that an executor cannot purchase at his own sale, as a rule of policy to prevent fraud, which might be practised. But that is only at the election of creditors and legatees, and the executor runs the
 
 *101
 
 risk of their making the election within any reasonable time. For if he agrees to give a great deal more than the value of the thing, the other parties may hold him to it. Besides, the defendant may not even have known, that he could not purchase through an agent at his own sale ; and, therefore, although his ignorance of the law will not help his purchase, yet it would repel the allegation of fraud. But giving to the return the full effect the plaintiff attributes to it, that it did not truly state all the facts respecting the sale, yet it it was his own folly to rely upon that, as evidence of the assets. It bound the defendant as his declaration, and as such the plaintiff used it; but surely a plaintiff, who chooses to prove a fact, not by direct evidence to it, but bjr the defendant’s declarations respecting it, is not entitled to be loosed from the verdict upon the ground, that he afterwards discovered that the defendant did not admit in the declaration all he might or ought to have done. The account of sales concludes no person — not even the executor, for he may undoubtedly prove a mistake in it. The law requires him to return it, for the ease of creditors and legatees; and, if they think proper to use it, they may do so as part of their evidence, giving other evidence to surcharge and falsify it, or they may rely simply upon the account by itself. Either is the creditor’s own act exclusively, unless, upon a communication with the executor, the latter take means to prevent the creditor from obtaining or using other proof, by inducing in him the belief, that the creditor could not establish any thing in opposition to the statements in the account. In truth, however, this bill seeks to avoid the obligation of the judgment at law, upon the mere ground, that the plaintiff might have offered cumulative proof as to the assets, which would have charged the defendant with more, if he had taken the trouble to search for it. He says, indeed, that the reason he did not search for other evidence was, that he believed the account of sales stated the truth, though he has since discovered, that it did not.
 
 *102
 
 Bat if it be admitted, that it did not, that would be a fraud in making the account, and not in the trial between the plaintiff and the defendant. It is impossible that every creditor of Blóunt can come into this Court, after a trial at law, for a fresh account of the assets, upon the ground, that the executor’s account of sales contained some inaccuracy, either through a mistake, or, if you please, through design. If so, every verdict on
 
 plene adminislravii
 
 will be overhauled in equity, upon separate bills by each creditor, if the creditor should, after the trial, discover, that he could have given better evidence as to the assets: For in every case it is the duty of
 
 the
 
 executor, by his inventory and account of sales, to charge himself with the whole. The Court cannot assume any such jurisdiction. Therefore it will be certified to the Court of Equity, that the decree was erroneous and should be reversed, and the demurrer sustained and the bill dismissed.
 

 The plaintiff must pay the costs in this Court.
 

 Per Curiam.
 

 Decree and order accordingly.